UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

PHILEASE MARTIN, as Preliminary Executor of
the Estate of Terrence Wise,

Plaintiff,

-against-

UNITED STATES OF AMERICA,

Defendant.

Case No.

**COMPLAINT**

Plaintiff Philease Martin, as Preliminary Executor of the Estate of Terrence Wise, by and through her counsel Emery Celli Brinckerhoff Abady Ward & Maazel LLP, hereby alleges the following:

**PRELIMINARY STATEMENT**

1. Terrence Wise tried for months in 2024 to obtain medical attention at the Metropolitan Detention Center in Brooklyn, New York ("MDC"), where he was a pre-trial detainee. Mr. Wise repeatedly reported to the MDC medical staff that he was ill, coughing up blood, and in desperate need of medical care. In response, the MDC staff failed to act, much less with any urgency. Instead, MDC staff needlessly delayed a lung computed tomography ("CT") scan, did not tell Mr. Wise about the scan's results once it was finally completed, refused to respond to Mr. Wise's and his attorney's increasingly urgent requests for his test results, and claimed that the mass in his lungs the CT had revealed was benign.

2. After months of delay, Mr. Wise was finally diagnosed with lung cancer in May 2024. But because of the inaction and delay of Federal Bureau of Prisons ("BOP") employees, Mr. Wise's cancer had by that time progressed from stage I to stage III, halving his odds of surviving the next five years and requiring additional invasive medical treatment.

3.    After he was sentenced, Mr. Wise was moved from the MDC to the Federal Medical Center ("FMC Butner") to serve his sentence. He died just eight months later, on November 2, 2025.

4.    BOP itself has conceded that the MDC health services department "missed" critical test results sent to it regarding Mr. Wise, and that "the delay was unfortunate." ECF No. 26, 23-cr-00009 (E.D.N.Y.).

5.    The government's delay in providing medical care to Mr. Wise was more than unfortunate; it caused Mr. Wise's cancer to advance, it caused him to require additional radiation therapy to treat his cancer, it caused his life expectancy with a timely diagnosis to be almost halved, and it caused his untimely death.

6.    As a result of the BOP's negligence and malpractice in evaluating Mr. Wise's health, responding to his requests for medical assistance and his medical records, correctly and timely diagnosing him, and timely treating his cancer, Mr. Wise experienced traumatic and permanent damage to his body, physical pain and injury, disability, and severe emotional distress before his death, and then the loss of his life.

7.    Acting through the BOP, the United States caused and is responsible for Mr. Wise's advanced cancer, additional required treatment, and untimely death.

## **PARTIES**

8.    Terrence Wise died as a direct result of the BOP's negligence and malpractice while he was incarcerated at the MDC. Before being moved to FMC Butner, Mr. Wise resided in Brooklyn, New York, where all the events giving rise to this Complaint occurred. At the time of his death and throughout the events giving rise to this Complaint, Mr. Wise was a citizen of the United States.

2

9.   Plaintiff Philease Martin is the Preliminary Executor of Mr. Wise's estate. Ms. Martin is a citizen of the United States and a 56-year-old woman who resides in Joliet, Illinois.

10.   At all times relevant to this Complaint, Defendant United States of America acted for all relevant purposes here through the Bureau of Prisons ("BOP").

11.   The BOP is a duly established agency of the United States responsible for providing safe and humane conditions for federal prisoners and for providing adequate health care to prisoners who require it.

12.   All conduct or omissions by individual BOP personnel alleged herein occurred in the scope of the respective individuals' office or employment with the BOP.

## JURISDICTION AND VENUE

13.   This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. This action arises under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2674.

14.   The acts complained of occurred in the Eastern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and/or omissions giving rise to the claims occurred in this District.

15.   As is explained below, the negligent acts and omissions of employees of the United States acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable under the law of the places where the respective acts and omissions occurred, were substantial factors in bringing about Mr. Wise's injury and death.

16.   Mr. Wise properly presented all claims asserted herein to the BOP in writing on or about March 21, 2025, which was within two years of the claim's accrual.

17.     The BOP did not respond to Mr. Wise's claims within six months of him presenting them. Plaintiff's Federal Tort Claims Act claims are timely under 28 U.S.C. § 2675(a).[1]

## FACTS

### Terrence Wise's Life

18.     Mr. Wise was born in Brooklyn in 1969.

19.     Mr. Wise's father died before he was born and his mother died when he was two years old.

20.     After his mother's death, Mr. Wise was raised by his maternal grandmother Bessie Wise. They lived in the East Flatbush area of Brooklyn until Mr. Wise was 13 years old. Mr. Wise and his grandmother relocated to East New York in the early 1980s, at the beginning of the crack epidemic.

21.     At certain times during his life, Mr. Wise struggled with addiction and his mental health, but he worked hard to address these issues.

22.     In 2016, Mr. Wise fell in love with Philease Martin, and they enjoyed years of partnership.



Figure 1. Terrence Wise and Philease Martin in 2018.

---

[1] Mr. Wise died after he filed the SF-95, but his death was a foreseeable consequence of the BOP's negligence complained of in that claim. Out of an abundance of caution, Plaintiff's counsel sent the BOP a ministerial amendment to the SF-95 on February 25, 2026 to reflect Mr. Wise's death.

23.     For several years, Mr. Wise lived a life of stability and happiness. He was attending mental health treatment, had stable employment, and a loving partnership with Ms. Martin.

24.     In 2020, as the Covid-19 pandemic ravaged New York, Mr. Wise lost his employment, and his mental health began to deteriorate.

25.     Mr. Wise was living in East New York, the same place where he had experienced years of trauma from the introduction of drugs in his community. At the same time, the presence of fentanyl and fentanyl-laced drugs was becoming increasingly common.

26.     Mr. Wise watched as countless members of his community, including a close friend, died from overdoses from fentanyl. This was too much to bear. Mr. Wise was overcome with fear and anger for himself and for his community.

27.     Taking matters into his own hands, Mr. Wise engaged in a series of ill-fated attempts to stop a drug dealer from selling fentanyl in his community. He was arrested in December 2022 as a result.

***After a Chest X-Ray Reveals a Nodule in Mr. Wise's Lung, MDC Delays a Lung CT Scan and Fails to Inform Mr. Wise of Its Results***

28.     In 2023, when his case was transferred to the Eastern District of New York from Kings County, Mr. Wise was remanded to and detained at the MDC.

29.     In January 2023, Mr. Wise had a chest x-ray which showed a nodule in his lung.

30.     On November 7, 2023, Mr. Wise was seen at the MDC by Dr. Rame Awd, who reviewed the January 2023 chest x-ray with Mr. Wise. Dr. Awd noted that the x-ray showed "radiographic findings suggestive of COPD" and a 7mm calcified nodule at the lateral right lower lung.

31.     In response to the x-ray's results, Dr. Awd ordered another x-ray for Mr. Wise on November 8, 2023.

32.    On November 9, 2023, Dr. Awd reviewed Mr. Wise's chest x-ray from the day before, finding the same calcified nodule.

33.    Dr. Awd ordered a lung CT scan with a scheduled target date of December 28, 2023.

34.    No lung CT scan was performed on that date, or for the next two months, even though on January 26, 2024, Mr. Wise was taken for an unrelated kidney ultrasound.

35.    On February 29, 2024, two months after the scheduled target date, Mr. Wise was taken for the lung CT scan, which revealed a 3.6 x 2.3 x 3.6 cm partially spiculated mass in the right lung. Mr. Wise was not told about the mass at that time.

36.    On March 18, 2024, Dr. Bruce Bialor signed that he had reviewed the CT report, nearly three weeks after the lung CT scan. Dr. Bialor did not inform Mr. Wise about the mass and Mr. Wise received no medical treatment at that time.

***MDC Fails to Respond to Increasingly Urgent Requests from Both Mr. Wise and His Attorney***

37.    Meanwhile, both Mr. Wise and his attorney attempted to get him the medical care he desperately needed.

38.    On March 12, 2024, Mr. Wise wrote to MDC medical asking for the results of his test.  He received no response. *See* Figure 2.

> TRULINCS 35692510 - WISE, TERRENCE - Unit: BRO-H-C
>
> FROM: 35692510
> TO: Sick Call
> SUBJECT: ***Request to Staff*** WISE, TERRENCE, Reg# 35692510, BRO-H-C
> DATE: 03/12/2024 03:27:44 PM
>
> To: doctor awd
> Inmate Work Assignment: na
>
> im writing to yu cause i was sent tou to take two different xrays and need to know my results plz....

Figure 2. March 12, 2024 message from Mr. Wise to Dr. Awd.

6

39.     On March 13, 2024, the Federal Defenders of New York, who represented Mr. Wise in his criminal case, filed a subpoena, *Touhy* request, and HIPAA release for Mr. Wise's medical records. They received no response.

40.     On April 11, 2024, unaware of the mass on his lungs, Mr. Wise wrote again to MDC medical, indicating that he was coughing up blood and was experiencing pain in his chest. *See* Figure 3.

TRULINCS 35692510 - WISE, TERRENCE - Unit: BRO-H-C

FROM: 35692510
TO: Sick Call
SUBJECT: ***Request to Staff*** WISE, TERRENCE, Reg# 35692510, BRO-H-C
DATE: 04/11/2024 12:55:36 PM

To: nurse
Inmate Work Assignment: na

toady i had coughed up blood afew times and I'm requesting to see medical.

Figure 3. April 11, 2024 Message from Mr. Wise to Sick Call.

41.     Again, he received no response.

42.     Mr. Wise wrote additional urgent requests on April 17, 2024, *see* Figure 4, and April 22, 2024, *see* Figure 5, indicating that he was still coughing up blood and still awaiting his test results.

TRULINCS 35692510 - WISE, TERRENCE - Unit: BRO-H-C

FROM: 35692510
TO: Sick Call
SUBJECT: ***Request to Staff*** WISE, TERRENCE, Reg# 35692510, BRO-H-C
DATE: 04/17/2024 06:24:05 PM

To: nurse
Inmate Work Assignment: na

i have afew medical issues.one im still coughing up blood out my mouth ,two i have a bed sore on my right side of my leg,three having serve pain on the left my chest where my nipple is and I've been writing doctor awd to find my results from the sonogram and the mri abt a month.i need to be seen by someone plz

Figure 4. April 17, 2024 message from Mr. Wise to Sick Call.

TRULINCS 35692510 - WISE, TERRENCE - Unit: BRO-H-C

FROM: 35692510
TO: Sick Call
SUBJECT: ***Request to Staff*** WISE, TERRENCE, Reg# 35692510, BRO-H-C
DATE: 04/22/2024 11:22:13 AM

To: nurse
Inmate Work Assignment: na

plz place on the call out for sick call.im coughing up blood still and i had told the officer that working my unit .....I've put in afew sick call slips abt my medical issues and still haven't gotten an response as yet ....i need to see medical

Figure 5. April 22, 2024 message from Mr. Wise to Sick Call.

43.    Again, he received no response.

44.    On April 24, 2024, Mr. Wise's criminal defense attorney visited him at the MDC,

learned of the four unanswered sick calls, and sought immediate medical attention.

**Mia Eisner-Grynberg**

| | |
|---|---|
| From: | Mia Eisner-Grynberg |
| Sent: | Wednesday, April 24, 2024 5:48 PM |
| To: | Papapetru, Sophia (BOP); 'Cardew, Michael (BOP)'; Peakes, Marc (BOP); Chan, Irene (BOP); Khan, Neha (BOP) |
| Cc: | 'BRO-MedicalAttention-s@bop.gov'; AUSA Andrew Roddin; Allison Berger; Michelle Gelernt; Deirdre von Dornum |
| Subject: | Terrence Wise 35692-510 |
| Attachments: | Wise sick calls 4.24.24.pdf; Terrence Wise Touhy Request 3-13-24.pdf |

Hello,

I visited our client Terrence Wise, 35692-510, today, and was disturbed to learn that he has not received any medical attention or follow-up since he was taken to an outside facility on February 28, 2024 for imaging on his kidney, liver, and chest. Attached please find a March 12, 2024 sick call request, seeking the results of his scans, to which he has received no response. On April 11, 2024, he began coughing up blood, which is particularly concerning given the ongoing health conditions that prompted the imaging. Attached please find his April 11, 17, and 22 requests for medical attention, all of which have gone unanswered.

Additionally, on March 13, 2024, we requested Mr. Wise's medical records (previously emailed Touhy request and subpoena attached). We've not received any response. That attachment contains a current HIPAA release. Please provide these records, and ensure the Mr. Wise is seen by medical this week, and provide confirmation of same.

Thank you,

Mia Eisner-Grynberg
Assistant Federal Defender
Federal Defenders of New York, Inc.
One Pierrepont Plaza, 16th Floor
Brooklyn, NY 11201
(718) 330-1257 (Office)
(914) 355-6493 (Cell)
Mia_Eisner-Grynberg@fd.org

Figure 6. April 24, 2024 Message from Mia Eisner-Grynberg to MDC Staff and AUSA Roddin.

45.    Mr. Wise's criminal defense attorney sent MDC Medical, MDC Legal, and AUSA Roddin an email seeking immediate medical attention. *See* Figure 6.

46.    Mr. Wise's attorney did not receive a response.

47.    Mr. Wise's cellmate at the MDC, Rafael Ortiz, observed Mr. Wise deteriorate during this period. For example, Mr. Ortiz observed Mr. Wise vomit blood on several occasions.

48.    Mr. Ortiz took care of Mr. Wise as well as he could. Mr. Ortiz assisted Mr. Wise with daily activities as Mr. Wise grew weaker, unable to eat or sleep.

49.    On multiple occasions, Mr. Wise asked for help from Beverly Timothy, a nurse practitioner at the MDC.

50.    Mr. Wise pleaded with Ms. Timothy to give him medical attention, but she ignored his pleas. On one occasion, Mr. Wise brought a cup full of blood to show Ms. Timothy how sick he was and how much blood he was coughing up. In response, Ms. Timothy threatened to put Mr. Wise in segregated housing.

***MDC Misdiagnoses Mr. Wise; Memorial Sloan Kettering Diagnoses Him with Lung Cancer***

51.    On April 26, 2024, Mr. Wise saw Ms. Timothy again, who for the first time advised him of the mass. However, Ms. Timothy baselessly diagnosed the mass as benign.

52.    Dr. Awd cosigned Ms. Timothy's erroneous diagnosis.

53.    On April 29, 2024, Mr. Wise appeared in court and reported the mass to his defense attorney, who again sought urgent medical attention for him, sent an email to MDC Medical and AUSA Roddin, and filed an emergency motion seeking medical care for Mr. Wise.

54.    When he returned from court to the MDC, Mr. Wise was taken to the emergency room at Brooklyn Hospital Center.

55. Once at the hospital, Mr. Wise learned that in the two months since his last lung CT scan on February 29, 2024, the mass had increased in size from 3.6 cm to 6 cm.

56. Mr. Wise remained at Brooklyn Hospital undergoing tests from April 29, 2024, until May 20, 2024.

57. On May 15, 2024, Memorial Sloan Kettering Cancer Center reviewed the biopsy taken at Brooklyn Hospital and diagnosed Mr. Wise with non-small cell carcinoma, favored to be adenocarcinoma, or lung cancer, in the right lung.

58. Mr. Wise was transferred to Maimonides Medical Center on May 20, 2024, which confirmed the diagnosis, and determined that his initial stage was IIB, for a lung mass between 5-7 cm, with lymph nodes negative for cancer and no distant metastases.

***Mr. Wise Undergoes Lengthy, Invasive Treatment While Shackled to a Bed; Surgery Shows He Has Stage III Cancer***

59. Following his April 29, 2024 admission to the hospital, Mr. Wise was given a lengthy course of chemotherapy and radiation.

60. During the months he received treatment, Mr. Wise was shackled to his bed for twenty-four hours a day.

61. He was shackled at Brooklyn Hospital, then at Maimonides Medical Center, at Windsor Nursing Home, and at CareWell Nursing Home.

62. Mr. Wise returned to the MDC between his cancer treatments.

63. He then travelled back and forth from the MDC, and its incessant lockdowns and violence, to the outside appointments he required for chemotherapy and radiation.

64. On September 24, 2024, Mr. Wise underwent a right upper lobectomy and lymph node dissection, *i.e.* had part of his right lung removed completely, at Maimonides Medical Center.

65.     That painful, invasive procedure revealed that cancer had spread to Mr. Wise's lymph node, rendering his actual stage of cancer IIIA—a diagnosis that was only reached five months *after* Mr. Wise had first sought medical assistance for coughing up blood, and seven months after a CT scan showed a mass in his lung.

66.     Mr. Wise remained at Maimonides (again shackled to the bed) for approximately one month, followed by another stay (still shackled to the bed) at CareWell.

67.     In October 2024, after the pathology returned, Mr. Wise began a one-year course of immunotherapy (intended to be 18 cycles, given once every three weeks).

68.     Mr. Wise again returned to the MDC in late October 2024, where he experienced myriad side effects and resulting issues from his cancer treatment and surgery, such as having to be rushed to medical when he could not breathe due to another inmate in a nearby cell being pepper sprayed.

69.     Mr. Wise developed arthritis and myositis, causing severe swelling and pain in his joints. In January 2025, the immunotherapy treatment was halted and he was placed on prednisone to manage his symptoms.

***As Mr. Wise Prepares for Sentencing, an Oncology Specialist Confirms that BOP's Delay in Diagnosing Him Caused His Lung Cancer to Advance***

70.     In preparation for Mr. Wise's sentencing, Dr. Philip Hoffman, a physician specializing in hematology and medical oncology, specific to lung cancer, reviewed Mr. Wise's medical records to determine whether his cancer could have been identified earlier, and if so, how his stage of cancer, recommended treatment, and prognosis might have differed.

71.     Dr. Hoffman concluded that, "despite Mr. Wise's efforts to advocate for his own health, i.e., multiple requests for his scan results and for medical visits, there was a major delay in arriving at his diagnosis."

72.     That delay "led to progression of his cancer stage from IB to IIIA."

73.     Further, had BOP obtained "the 2/29/24 CT . . . either shortly after it was ordered on 11/9/23, or even on its target date of 12/28/23, it is entirely possible that the tumor would have been between 2 cm and 3 cm, making his stage [IA3], with an expected 5-year survival of 80% with surgery alone."

74.     In addition, "while [Mr. Wise] might have required chemotherapy as part of his treatment with either stage, he would not have required 6 weeks of concomitant radiation therapy if he had been diagnosed at the earlier stage."

75.     Thus, Dr. Hoffman concluded, "the delays in responding to Mr. Wise's complaints and in obtaining appropriate studies led to advancement of his lung cancer, the need for additional therapy and a reduction in his life expectancy."

***BOP's Failures Cut Mr. Wise's Life Expectancy in Half***

76.     BOP's failures directly led to Mr. Wise's delayed diagnosis.

77.     BOP failed to take Mr. Wise for a CT scan that was ordered on November 9, 2023, by the target date of December 28, 2023. Instead, Mr. Wise was taken for a CT scan on February 29, 2024.

78.     BOP failed to review the results of the CT scan in a timely manner. The scan was completed on February 29, 2024, and Mr. Wise was not diagnosed with lung cancer until May 15, 2024. All the while, BOP failed to review the CT results in a timely manner, to communicate those results once it had reviewed them, and ignored Mr. Wise's numerous pleas for medical attention.

79.     The expected five-year survival for patients with stage IIIA lung cancer, like Mr. Wise, following the course of treatment that he received, is 41%—half of the expected five-year survival rate for patients with stage IA lung cancer.

80.     Mr. Wise did not survive for five years after his diagnosis. He lived just a year-and-a-half post-diagnosis.

***The United States's Explanation for Its Failures: It "Somehow Missed" A Critical Health Report and the Delay Was "Unfortunate"***

81.     When ordered by Judge Henry, who was the magistrate judge presiding over Mr. Wise's emergency motion, to provide an update regarding Mr. Wise's medical treatment, the government filed a document on May 3, 2024 that quoted the MDC as stating: "On February 29, 2024, Mr. Wise went out to the Brooklyn Hospital Center (TBHC) for a CT scan because of a 7-mm calcified nodule in the right lung. MDC Brooklyn did not receive the results until March 11, 2024. The CT scan shows a 3.6 x 2.3 x 3.6 cm mass. The results were somehow missed by the health services department, and the delay was unfortunate." ECF No. 26, 23-cr-00009 (E.D.N.Y.).

82.     MDC Brooklyn's troubling history of insufficient medical care is well documented. *See*, *e.g.*, *United States v. Chavez*, 22-CR-303 (JMF), 710 F. Supp. 3d 227, 234 (S.D.N.Y. 2024) (citing a lengthy array of documented cases of delayed medical care); *United States v. Ricketts, et al.,* 22-CR-106 (LDH), ECF No. 330 (Order to Show Cause Hearing regarding the MDC's failure to provide medical care to an incarcerated individual, resulting in a ruptured appendix).

83.     On or about April 7, 2025, Mr. Wise was transferred from MDC Brooklyn to FMC Butner in North Carolina to serve his sentence.

84.     During sentencing, Judge Gujarati, the district court judge presiding over Mr. Wise's criminal case, said the MDC's handling of Mr. Wise's condition was a "significant factor" in her decision about the appropriate sentence to impose.

85.     At FMC Butner, Mr. Wise was given another round of immunotherapy, but he again experienced inflammatory arthritis with severe pain and swelling in his joints. The pain was so

severe that Mr. Wise had trouble walking and fell several times. He became mostly wheelchair-bound and relied on his roommate to help him care for himself.

86.     Mr. Wise died on November 2, 2025 while he was in BOP custody at FMC Butner.

87.     The United States caused and is responsible for Mr. Wise's advanced cancer, additional required treatment, and untimely death because, acting through BOP, it unreasonably (i) failed to promptly conduct a lung CT scan for Mr. Wise by the target date set for December 2023; (ii) failed to read the results of the lung CT scan once it received them; (iii) failed to respond to Mr. Wise's many requests for his records and for medical help over the course of spring 2024; (iv) failed to respond to Mr. Wise's counsel's requests for Mr. Wise's medical records and for medical assistance over the course of spring 2024; (v) failed to diagnose Mr. Wise in a timely fashion, instead initially diagnosing Mr. Wise's mass as benign; and (vi) failed to treat Mr. Wise's cancer in a timely fashion.

88.     The United States' failures materially impacted Mr. Wise's health, course of treatment, and likelihood of survival.

**<u>FIRST CAUSE OF ACTION</u>**
28 U.S.C. §§ 1346(b) and 2674
Federal Tort Claims Act
Negligence – Failure to Provide Adequate Medical Care

89.     Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

90.     At all relevant times pursuant to this Complaint, Defendant United States, acting through the BOP, owed Mr. Wise, as an incarcerated individual, a duty of care with respect to his health and safety, which required, among other things, prompt and immediate treatment of Mr. Wise's serious medical conditions.

91. When prison medical staff know or should know that a prisoner is seriously ill or injured, a duty arises to provide reasonable care to treat that serious illness or injury.

92. The United States had a duty to provide reasonable care to Mr. Wise in light of the November 2023 x-ray that showed a calcified nodule in his right lung, the February 2024 CT scan that showed a mass in his right lung, and the multiple requests for medical assistance from Mr. Wise and his attorney.

93. The standard of care required, among other things, that BOP provide prompt care and evaluation to assess Mr. Wise for cancer, provide appropriate treatment, and monitor his health.

94. At all relevant times pursuant to this Complaint, Defendant United States breached its duty to Mr. Wise.

95. Given the progression of untreated lung cancer, Stage III cancer and death were reasonably foreseeable consequences of the BOP's failure to provide health care.

96. By failing to promptly conduct a lung CT scan for Mr. Wise in December 2023, the BOP demonstrated a complete disregard for Mr. Wise's life and safety, and thereby breached the duty owed to Mr. Wise.

97. By failing to respond to Mr. Wise's many messages and requests for his records and for medical help over the course of spring 2024, the BOP demonstrated a complete disregard for Mr. Wise's life and safety, and thereby breached the duty owed to Mr. Wise.

98. By failing to respond to Mr. Wise's counsel's requests for Mr. Wise's medical records and for medical assistance over the course of spring 2024, the BOP demonstrated a complete disregard for Mr. Wise's life and safety, and thereby breached the duty owed to Mr. Wise.

99.     By failing to diagnose Mr. Wise in a timely fashion, instead initially diagnosing Mr. Wise's mass as benign, the BOP demonstrated a complete disregard for Mr. Wise's life and safety, and thereby breached the duty owed to Mr. Wise.

100.    By failing to treat Mr. Wise's cancer in a timely fashion, the BOP demonstrated a complete disregard for Mr. Wise's life and safety, and thereby breached the duty owed to Mr. Wise.

101.    The actions of BOP staff towards Mr. Wise represent a gross deviation from the actions a reasonable individual would have taken in their positions, given their knowledge and employment.

102.    A private employer would otherwise be liable for the negligence of BOP staff towards Mr. Wise. Defendant United States is therefore liable for tort claims under the Federal Tort Claims Act.

103.    As a direct and proximate result of Defendant's misconduct detailed above, Mr. Wise suffered devastating, permanent, and unnecessary injuries, including physical injury, severe pain and suffering, disability, emotional distress, and monetary damages.

## SECOND CAUSE OF ACTION
28 U.S.C. §§ 1346(b) and 2674
Federal Tort Claims Act
Medical Malpractice

104.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

105.    At all relevant times, Defendant United States had a non-delegable duty to provide Mr. Wise with reasonable medical care while in the care, custody, and control of the BOP.

106. At all relevant times, Defendant United States had a duty to render medical care to Mr. Wise in accordance with the accepted professional standards of medical care and treatment rendered by reasonably prudent health care providers.

107. At all relevant times, Defendant United States held itself out as possessing the proper degree of learning and skill necessary to render the medical care, treatment, and services in accordance with good and accepted medical practice.

108. Defendant United States deviated from accepted medical practice including by: failing to promptly conduct a lung CT scan; failing to promptly review the results of that CT scan; failing to respond to Mr. Wise's many messages and requests for his CT scan result; ignoring Mr. Wise's pleas for medical help and symptoms that were suggestive of a life-threating medical condition, including vomiting blood on multiple occasions; failing to respond to Mr. Wise's counsel's requests for Mr. Wise's medical records and for medical assistance; failing to diagnose Mr. Wise's cancer in a timely manner; and failing to treat Mr. Wise's cancer in a timely manner.

109. As a direct and proximate result of Defendant's misconduct detailed above, Mr. Wise suffered physical injury, physical pain and suffering, disability, conscious pain and suffering, pre-death terror, emotional distress, monetary damages, and death.

110. As a direct and proximate result of Defendant's misconduct detailed above, the statutory distributees of Mr. Wise's estate sustained pecuniary and non-economic loss resulting from the loss of Mr. Wise's love, comfort, society, attention, services, income, support and life.

**THIRD CAUSE OF ACTION**
28 U.S.C. §§ 1346(b) and 2674
Federal Tort Claims Act
Wrongful Death

111. Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

17

112.    As a direct and proximate result of Defendant's misconduct detailed above, Mr. Wise suffered physical injury, physical pain and suffering, conscious pain and suffering, pre-death terror, emotional distress, monetary damages, and death.

113.    As a direct and proximate result of Defendant's misconduct detailed above, the statutory distributees of Mr. Wise's estate sustained pecuniary and non-economic loss resulting from the loss of Mr. Wise's love, comfort, society, attention, services, income, support and life.

114.    Defendant United States is liable for the wrongful death of Mr. Wise.

## FOURTH CAUSE OF ACTION
28 U.S.C. §§ 1346(b) and 2674
Federal Tort Claims Act
Conscious Pain and Suffering

115.    Plaintiff repeats and realleges the above paragraphs as if the same were fully set forth at length herein.

116.    As a direct and proximate result of Defendant's misconduct detailed above, Mr. Wise suffered physical injury, physical pain and suffering, conscious pain and suffering, pre-death terror, emotional distress, monetary damages, and death.

## RELIEF

WHEREFORE, Plaintiff respectfully requests relief as follows:

1. An award of compensatory damages in an amount to be determined at trial;

2. Reasonable costs and reasonable attorneys' fees pursuant to the Equal Access for Justice Act, 28 U.S.C. § 2412; and

3. Such other and further relief as the Court deems just and proper.

Dated: June 25, 2026
     New York, New York

                    EMERY CELLI BRINCKERHOFF
                    ABADY WARD & MAAZEL LLP

                    _____
                    Katherine Rosenfeld
                    Claire Z. Abbadi

                    One Rockefeller Plaza, 8th Floor
                    New York, New York 10020

                    (212) 763-5000

                    *Attorneys for Plaintiff*